IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERIKA G. HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | Magistrate Judge |
| ATCO INDUSTRIES, INC., | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

## COMPLAINT

For her Complaint against Defendant ATCO Industries, Inc., Plaintiff Erika Henry states:

### PARTIES

1. Ms. Henry is a legal resident of Milton, Tennessee, and a former employee of ATCO.

2. ATCO is a Michigan corporation with its principal place of business in Sterling Heights, Michigan. ATCO conducts business in Smyrna, Tennessee, among other locations.

3. ATCO may be served with process through its registered agent, Incorp. Services, Inc., 216 Centerview Drive, Suite 317, Brentwood, Tennessee 37027-3226 or, alternatively, at its principal place of business at 7300 15 Mile Road, Sterling Heights, Michigan 48312.

### JURISDICTION AND VENUE

4. This is an action for equitable relief and damages brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (FMLA); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA); the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 (TDA); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (THRA); the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 (TPPA); and Tennessee common law. The

Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1367(a). ATCO is a Michigan corporation and the amount in controversy in this case exceeds $75,000. Venue is proper under 28 U.S.C. § 1391.

5. Ms. Henry reserves the right to amend this complaint to assert disability discrimination and retaliation claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (ADA) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII). Ms. Henry has filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. Once she obtains a notice of suit rights from the EEOC she will amend this complaint to include her ADA and Title VII claims.

### FACTS

6. ATCO performs work as an on-site contractor at the Nissan North America automobile manufacturing plant in Smyrna, Tennessee.

7. Ms. Henry was employed by ATCO at the Nissan plant in Smyrna until ATCO actually and constructively discharged her on November 23, 2011.

8. Ms. Henry was qualified for her job with ATCO and performed her job duties in a competent and satisfactory manner.

9. In the summer of 2010, Ms. Henry was subjected to sexual harassment and assault and battery by a supervisor named Ronnie who worked in her work area. Upon information and belief, Ronnie worked for Yates Services, another on-site contractor at the Nissan plant. Ronnie made numerous unwelcome and offensive statements of a sexual nature to Ms. Henry; forced her to look at naked pictures of himself on his cell phone; placed his arm around her and barricaded a doorway so that she could not leave until she answered questions about his pictures; sent her unwelcome and offensive text messages; touched her inappropriately while making sexual

comments; stalked and followed her around the workplace; leered at her; and made her extremely uncomfortable, among other things. Upon information and belief, this was not the first time that Ronnie had engaged in such illegal conduct, and it was well-known that he had a propensity to sexually harass female workers.

10. On or about August 2, 2010, Ms. Henry reported the above-described conduct to ATCO's night shift supervisor, Sean Scott, who advised her to "tell Nissan" about it.

11. Ms. Henry then reported the above-described conduct to a Nissan manager named Joel, who advised her that she had done the right thing and that Ronnie's conduct was illegal.

12. Following her reports of sexual harassment and assault, ATCO placed Ms. Henry on leave without pay.

13. While she was on leave without pay, two ATCO supervisors, Marla Coggins and a man named Ron, scheduled a meeting with Ms. Henry at a local hotel. During the meeting, Coggins was visibly upset and would not look at or acknowledge Ms. Henry. She had not acted this way toward Ms. Henry before she had reported sexual harassment and assault. Ms. Henry again relayed the details of the illegal conduct to which she had been subjected. ATCO then sent her back home.

14. ATCO's night-shift supervisor, Sean Scott, later called Ms. Henry and advised her that Coggins and Ron wanted to meet with her again, this time at the Nissan plant. Ms. Henry met with Coggins and Ron, a female HR manager from Nissan, and a male HR manager from Yates. She again advised these individuals of the sexual harassment and assault to which she had been subjected. She also provided a written statement. At the conclusion of this meeting, it was determined that, despite his conduct, Ronnie would get to continue working in his same position, and that Ms. Henry would be displaced from her job and moved elsewhere.

15. An ATCO "scheduler" in Michigan named Patrick later called Ms. Henry and advised her to report to the Johnson Controls, Inc. (JCI) plant in Murfreesboro, Tennessee, and that she would be working there instead of at the Nissan plant in Smyrna.

16. Ms. Henry reported to the JCI site and worked there for approximately three weeks unloading trucks. During this time, she reported to a supervisor, Jim Schneider, that she was experiencing considerable pain and swelling in her hands, arms and shoulders. In response Schneider recited "three rules about Jim Schneider" to her, indicating that she should not report her injury.

17. Schneider also badgered Ms. Henry for more details as to why she had been placed at the JCI site. He indicated that he was aware of what had happened to her at the Nissan plant and that he did not approve of her reporting activity. Ms. Henry refused to provide details about the matter because she had been advised not to.

18. On August 26, 2010 Ms. Henry again reported her injury to Schneider and advised him that her hand, arm and shoulder pain and swelling had become worse and that she needed to see a doctor.

19. Ms. Henry then saw a doctor who advised her that she needed to take a week of medical leave from work due to her upper extremity condition.

20. Ms. Henry advised Patrick and ATCO's Human Resources Manager at its headquarters in Michigan, Sheri Hutchings, that she had been hurt on the job, that she needed to take a week of medical leave, and provided them her doctor's note so stating. Hutchings confirmed to Ms. Henry that she received her doctor's note.

21. Ms. Henry further requested an ATCO "Incident Report Form" to complete with respect to her injury. Hutchings failed and refused to provide her one.

4

22. ATCO further failed and refused to provide Ms. Henry the required notices of her rights to intermittent or other leave under the FMLA, thereby interfering with those rights.

23. At the conclusion of Ms. Henry's week of medical leave, Patrick called her and advised her that she was "not in the field anymore" and to report back to the Nissan plant, despite the fact that no one had followed up with her about her complaints of sexual harassment.

24. Ms. Henry asked Patrick about the status of her sexual harassment reports. He responded that she would be reporting to Coggins on the day shift. No one with ATCO ever followed up with Ms. Henry about her sexual harassment reports, any investigation or resolution of them, or any corrective action that would be taken.

25. Upon Ms. Henry's return to work on or about September 7, 2010, Coggins embarked upon a continuous, eight-month-long crusade of severe and pervasive retaliatory harassment of her in an effort to force her to quit.

26. Coggins and her roommate, Helen, repeatedly advised other employees to "stay away from [Ms. Henry]" because she "gets people fired for no reason," evidencing illegal retaliatory motives. Other workers stated to Ms. Henry that Coggins was trying to force her to quit because of her reporting activity.

27. Coggins isolated Ms. Henry and assigned her extremely physically demanding assembly line jobs, despite know of her upper extremity pain. Previously, two men had performed jobs that Coggins required Ms. Henry to do alone. Additionally, after she would place Ms. Henry in other jobs, Coggins would alter the demanding jobs for other employees so that they were not nearly so challenging. Many of the tasks that Coggins would require Ms. Henry to perform were not on applicable job "checklists." Moreover, while every other

5

employee was permitted or required to "rotate" through jobs, Coggins continuously refused to allow Ms. Henry to rotate. Coggins ignored and would not look at or speak to Ms. Henry.

28. ATCO treated other non-protected employees differently than it treated Ms. Henry. For example, it promptly completed Incident Reports and set up doctor and physical therapy appointments for other employees who complained of pain, but continuously refused to do so for Ms. Henry.

29. Coggins ultimately gave Ms. Henry an "Incident Report Form" for her injury, which Ms. Henry had been requesting since August 2010, on November 1, 2010.

30. Ms. Henry completed the Incident Report Form on November 2, 2010, and faxed it to Hutchings in Michigan on November 3, 2010.

31. Hutchings acknowledged her receipt of Ms. Henry's November 2, 2010, Incident Report Form in a November 5, 2010, voicemail message.

32. On November 10, 2010, Schneider approached Ms. Henry and called her "Miss boo-boo."

33. Hutchings failed and refused to submit Ms. Henry's Incident Report Form and to provide her additional information and a panel of physicians as required by Tennessee's workers' compensation laws.

34. ATCO later claimed that it never received Ms. Henry's November 2, 2010, Incident Report Form and that she had not reported her injury to it.

35. Ms. Henry and her supervisor, Mike Arsenault, repeatedly reported to ATCO, Hutchings and Coggins that Ms. Henry had not been paid for certain regular and overtime hours that she had worked and that Michigan state tax and other withholdings had been improperly

6

deducted from her paychecks from 2009 through 2011. They repeatedly faxed Ms. Henry's time sheets and paystubs to Julie in ATCO's billing department in Michigan, to no avail.

36. On April 20, 2011, Ms. Henry faxed and sent by certified U.S. Mail her earnings statements and time information to Marilyn in ATCO's billing department in Michigan. She did so again on July 20, 2011, and again on September 9, 2011. Marilyn and Hutchings both acknowledged receipt of these materials. Ms. Henry repeatedly called them about ATCO's failure to pay her as required by law and its improper deductions and withholdings, to no avail.

37. ATCO has willfully failed and refused to pay Ms. Henry for hours that she worked from 2009 through 2011 and to reimburse her for its improper deductions and withholdings from her paychecks during that time period.

38. In the spring of 2011 Ms. Henry advised Coggins that certain tasks she was assigning her without allowing her to "rotate" were causing her pain. Coggins ignored Ms. Henry. Ms. Henry reported this to her "lead," a man named Major. Major advised her that she could "work in peace on the line, or go back to the SLC [area] and be on the hot seat with [Coggins]." Major stated to Ms. Henry that Coggins was "irritated with [her]."

39. As a reasonable accommodation of her upper extremity condition, Ms. Henry repeatedly asked Coggins to allow her to rotate, or to at least be placed in a normal, less physically demanding job that was actually designed for one person instead of two. Coggins refused to consider her requests.

40. In March or April 2011, Ms. Henry advised Coggins that her having to use a large, heavy mallet repetitively on a particular job was causing her pain. She asked that the job be modified or that she be allowed to rotate. Coggins yelled at her and stated, "I know you are

7

hurt – Sheri [Hutchings] told me; but you need to get with her because it happened in the field, not with me!"

41. After repeatedly inquiring with Hutchings about the status of her November 2, 2010, Incident Report, to no avail, Ms. Henry obtained a "Request for Assistance" form from the Tennessee Department of Labor and Workforce Development, Division of Workers' Compensation (TDOL) on April 2, 2011. She completed it and filed it on April 5, 2011.

42. On April 27, 2011, Sandy Cook, a claims adjustor from ATCO's workers' compensation insurance carrier, Accident Fund General Insurance Company (AFIC), called Ms. Henry and told her that she had discussed her workers' compensation claim with Hutchings, that there was "nothing wrong with [Ms. Henry]," that she "ha[d] no claim," and that her claim had been denied on April 25, 2011.

43. On May 11, 2011, Ms. Henry advised Coggins that she needed to see a doctor due to pain in her upper extremities. ATCO again failed and refused to provide Ms. Henry the required notices of her rights to intermittent or other leave under the FMLA. On May 12, 2011, Ms. Henry advised Coggins that she would be returning to work on May 13, 2011.

44. On May 13, 2011, Ms. Henry had been working for approximately 45 minutes when Coggins, who had been conferring with Hutchings on the telephone that morning, approached her and stated, "We cannot be liable for you getting hurt at work." Coggins then sent Ms. Henry home, without pay, and advised her that she could not come back to work until she presented a doctor's note stating that she had "no restrictions."

45. ATCO took this adverse employment action without first engaging in a good-faith interactive process with Ms. Henry designed to identify reasonable accommodations of her

8

medical condition. It further did so without providing Ms. Henry the required notices of her rights to intermittent or other leave and to job restoration under the FMLA.

46. After being placed on involuntary leave without pay, Ms. Henry repeatedly called Hutchings and Cook and asked to be returned to work. Like Coggins, Hutchings stated to her that "we cannot be liable for you getting hurt at work." Both Hutchings and Cook told Ms. Henry that they "[could] not do anything for [her]" and that "it [was] out of [their] hands" because her workers' compensation case had been "closed."

47. Ms. Henry also contacted Brian Holmes, a TDOL Workers' Compensation Specialist, and advised him of ATCO's and AFIC's conduct. In mid-May 2011 Holmes advised her that an error had occurred and that he would "re-open" her workers' compensation case.

48. On July 8, 2011, Holmes issued a "Benefit Review Report" and an "Order for Medical Benefits" directing ATCO and AFIC to provide a panel of physicians for Ms. Henry for the purpose of determining whether she sustained a work-related injury.

49. On July 8, 2011, Cook sent Ms. Henry a letter stating that "the department of labor has ordered us to provide you with a panel of physicians in order to have your alleged workers' compensation injuries evaluated."

50. Ms. Henry completed "Employee's Choice of Physician" and "Medical Waiver and Consent" forms and returned them to Cook on July 13, 2011. She then completed and submitted "Request for Benefit Review Conference" forms on or about July 20, 2011.

51. After several follow-up calls from Ms. Henry, Cook scheduled a doctor's appointment for her with Dr. Stephen Neely in Lebanon, Tennessee, on August 8, 2011.

52. At the August 8 appointment Dr. Neely did not examine Ms. Henry but stated that he needed to run some tests and sent her home.

9
Case 3:12-cv-00104   Document 1   Filed 01/23/12   Page 9 of 17 PageID #: 9

53. After the appointment Ms. Henry called Cook several times. Cook advised her that Dr. Neely had not addressed the issue of causation and that she could not schedule any other appointments until he did.

54. Dr. Neely ultimately recommended that Ms. Henry see a neurologist.

55. On October 10, 2011, Cook sent Ms. Henry a letter providing her a panel of neurologists. Ms. Henry completed "Employee's Choice of Physician" and "Medical Waiver and Consent" forms and returned them to Cook on October 12, 2011.

56. Ms. Henry saw Dr. Joseph Jestus, a neurologist in Cookeville, Tennessee, on November 1, 2011. Dr. Jestus diagnosed her condition as "arthropathy" and recommended that she follow up with her family doctor or rheumatologist.

57. Dr. Jestus released Ms. Henry to return to work with no restrictions effective November 2, 2011.

58. In the summer and fall of 2011, Ms. Henry contacted Cook, Holmes, Hutchings and Coggins and repeatedly asked if she could return to work. She wanted and was able to do so, with or without reasonable accommodation. When told that she could not, Ms. Henry asked if she could apply for short-term disability benefits, as she had no income. She was repeatedly advised that she could neither return to work nor apply for STD benefits.

59. On November 10, 2011, the TDOL through Holmes issued an "Order Denying Workers' Compensation Benefits." Holmes also advised Ms. Henry that she could return to work since her workers' compensation case had been closed.

60. Ms. Henry attempted to return to work at ATCO on November 14, 2011, with her doctor's release. Patrick at Nissan contacted Hutchings, who directed that Ms. Henry be sent back home, still without any pay. Ms. Henry went home and contacted Hutchings as she was

told to do. Hutchings told her not to go back to work and to remain at home until she could schedule yet another doctor's appointment for her.

61. On November 18, 2011, Hutchings directed Ms. Henry to see another doctor at Concentra Medical Center, which is a "walk-in clinic" in Murfreesboro, Tennessee. Ms. Henry complied. That doctor indicated that Ms. Henry may have carpal tunnel syndrome.

62. On November 23, 2011, a benefit review telephone conference was held with a workers' compensation administrator, Ronald W. McNutt; Ms. Henry; and ATCO's attorney in the workers' compensation case, Heather Hardt Douglas. Ms. Henry stated that she did not understand why she had not been allowed to return to work and asked why that was so. Ms. Douglas expressed her surprise over the fact that ATCO had refused to allow Ms. Henry to return to work. She advised Ms. Henry that she should be allowed to return to work and that she would contact Hutchings and let her know.

63. Ms. Henry called Hutchings on November 23, 2011, to advise her that the benefit review conference had been concluded and that she wished to return to work. Despite this and the medical opinion of Ms. Henry's neurologist, Hutchings responded that ATCO had no jobs for her, that she was not fit for duty, and that she was discharged effective immediately.

64. Hutchings further stated that she would send Ms. Henry a separation notice and letter and a check for the unpaid wages, overtime and improper deductions that ATCO still owes her from 2009-2011, which Ms. Henry had been requesting for over seven months.

65. On November 23, 2011, Ms. Henry sent an email to Jeanette Baird with the TDOL Workers' Compensation Division confirming that ATCO had discharged her that morning and that Hutchings had stated that she was not fit for duty and that ATCO was no longer able to employ her.

66. When Ms. Henry did not receive the separation notice and letter and pay that she is owed, she called Hutchings on November 30, 2011. Hutchings stated to her that "the doctor determined that you can't do the essential functions of your position," that "we cannot accommodate you," and that "the gist of the letter" that she was going to send her was that she "was terminated" for this reason.

67. ATCO discharged Ms. Henry because of an actual or perceived disability and/or in retaliation for engaging in legally protected activity, in violation of federal and state law.

68. Approximately one to two weeks after Ms. Henry's discharge, Hutchings began calling her and repeatedly stating "how can we accommodate you" in a sarcastic and unfriendly tone of voice. Ms. Henry responded that she did not need accommodations because her neurologist, Dr. Jestus, had released her to return to work with no restrictions. Hutchings never stated to Ms. Henry that she could return to work.

69. Despite her repeated requests to return to work from May through November 2011, ATCO never allowed Ms. Henry to return to work. ATCO actually and constructively discharged Ms. Henry.

70. ATCO's conduct as described in this complaint was willful, intentional, malicious, fraudulent, and deliberately or recklessly indifferent to Ms. Henry's protected rights.

71. As a result of ATCO's conduct, Ms. Henry has lost income and other privileges and benefits of employment and incurred medical expenses she otherwise would not have incurred; suffered embarrassment, humiliation, emotional distress, mental anguish, anxiety, inconvenience, and loss of enjoyment of life; and incurred attorney's fees, costs, and litigation expenses.

## RETALIATION CLAIMS

72. ATCO retaliated against Ms. Henry for reporting, opposing and refusing to remain silent about the sexual harassment and assault and battery to which she was subjected, in violation of the THRA, the TPPA and Tennessee common law. It did so by subjecting her to continuous, severe and pervasive retaliatory harassment by one or more supervisors and multiple suspensions or dismissals without pay from the time that she reported the illegal conduct until it discharged her, and by actually and/or constructively discharging her.

73. ATCO retaliated against Ms. Henry for requesting reasonable accommodations and exercising medical leave, in violation of the FMLA, the TDA, the TPPA and Tennessee common law. It did so by subjecting her to continuous, severe and pervasive retaliatory harassment by one or more supervisors; denying and ignoring her requests for accommodation; subjecting her to multiple suspensions or dismissals without pay; and actually and/or constructively discharging her.

74. ATCO retaliated against Ms. Henry for exercising her rights under Tennessee's workers' compensation laws and/or for refusing to remain silent about its failure to comply with those laws, in violation of Tennessee common law and the TPPA. It did so by actually and/or constructively discharging her.

75. ATCO retaliated against Ms. Henry for reporting, opposing and refusing to remain silent about violations of the FLSA, in violation of the FLSA, the TPPA and Tennessee common law.

## DISABILITY DISCRIMINATION CLAIMS

76. Ms. Henry was disabled within the meaning of the TDA. ATCO also regarded Ms. Henry as disabled and perceived her as having an impairment.

77. Ms. Henry was otherwise qualified to perform the essential functions of her job with ATCO, with or without reasonable accommodation.

78. ATCO subjected Ms. Henry to multiple adverse employment actions, as described herein, because of disability, in violation of the TDA.

79. ATCO failed to engage in a good-faith interactive process designed to identify reasonable accommodations and failed to reasonably accommodate Ms. Henry when it denied and ignored her requests for accommodation; placed her on involuntary leave without pay on May 13, 2011; and refused to allowed her to return to work, with or without reasonable accommodation, before discharging her, in violation of the TDA.

## FMLA CLAIMS

80. ATCO is a covered employer under the FMLA.

81. Ms. Henry was eligible for and entitled to intermittent or other FMLA leave in between August 2010 and November 2011. She informed ATCO of her serious health condition and requested intermittent and other leave for that condition.

82. ATCO failed and refused to provide Ms. Henry the required notices of her rights to intermittent and other leave and to job restoration under the FMLA. ATCO interfered with Ms. Henry's FMLA rights and she lost benefits and protections afforded by the FMLA as a result.

83. ATCO further discriminated and retaliated against Ms. Henry for exercising medical leave and for opposing its failure to allow her to return to work following her exercise of leave that should have been, but was not, designated by ATCO as FMLA leave.

## FLSA CLAIMS

84. ATCO is an "employer" within the meaning of 29 U.S.C. §203(d) and a "person" within the meaning of 29 U.S.C. § 203(a). ATCO is an enterprise or person engaged in commerce as defined by the FLSA, with a gross annual dollar business volume exceeding $500,000. ATCO and its employees, including Ms. Henry, engaged in activities in or affecting interstate commerce during Ms. Henry's employment.

85. The minimum wage and overtime provisions set forth in §§206 – 207 of the FLSA apply to ATCO and applied to Ms. Henry while she was employed by ATCO. Ms. Henry was entitled to the rights, protections and benefits provided under the FLSA during her employment with ATCO.

86. 29 U.S.C. § 207(a)(1) provides that employees shall be paid overtime compensation at a rate of not less than one and one-half times their regular rate of pay for hours worked in excess of 40 hours per work week.

87. Ms. Henry was entitled to overtime compensation at a rate of not less than one and one-half times her regular rate of pay for all hours of overtime that she worked for ATCO.

88. Ms. Henry routinely worked overtime hours in excess of 40 hours per work week while employed by ATCO.

89. At times Ms. Henry received no compensation, was paid at rates less than one and one-half times her normal hourly rate, and/or was paid below the minimum required wage for certain overtime hours that she worked for ATCO.

90. ATCO deprived Ms. Henry of compensation owed to her by failing and refusing to pay her for work performed in accordance with the FLSA.

91. ATCO's violations of the FLSA as described herein were willful.

92. As a result of ATCO's violations of the FLSA, Ms. Henry has suffered damages by not receiving the required minimum wage and/or overtime compensation to which she is entitled.

93. In addition to the amount of unpaid wages owed, Ms. Henry is entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. § 216(b), attorneys' fees, prejudgment interest, and the costs of this action.

94. 29 U.S.C. § 211(c) and United States Department of Labor regulations impose a duty on ATCO to maintain and preserve Ms. Henry's payroll, time and other employment records from which the amounts she is owed may be ascertained.

## RELIEF REQUESTED

Ms. Henry requests:

1. A jury trial;
2. Back pay and benefits;
3. Front pay and benefits;
4. Compensatory damages;
5. Punitive damages;
6. Liquidated damages;
7. Attorneys' fees and expenses;
8. Prejudgment interest and, if applicable, post-judgment interest; and
9. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

_____
Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff